UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ROBERT E. BUSBY, JR., and ) | Case No. 08-49289-659 |
| DORINDA R. BUSBY, ) | Chapter 13 |
| ) | |
| Debtors. ) | PUBLISHED |

**O R D E R**

The matter before the Court is Debtors' [sic] Objection to Claim #9-1 of Kimberly A. Thomas and Creditor's Response to Debtors' Objection to Creditor's Claim. A hearing was held on October 28, 2009, at which the parties appeared by counsel and in person. Upon consideration of the record as a whole, the Court issues the following FINDINGS OF FACT:

Robert Busby (hereinafter "Debtor") and Dorinda Busby filed a joint voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on November 20, 2008, which was converted to a Chapter 13 case on January 8, 2009. Kimberly Thomas (hereinafter "Claimant"), ex-wife of Debtor, filed an unsecured claim in the amount of $7,823.70.

Claimant and Debtor were divorced on August 25, 2006. Pursuant to the Family Court Judgment ordering dissolution of the marriage, Claimant and Debtor entered into a Separation Agreement, also dated August 25, 2006. Claimant and Debtor owned a home located at 1036 Stone Spring Court, Eureka, Missouri (hereinafter "Residence") which was initially listed for sale on July 11, 2006 with a listing price of $374,900.00. Claimant testified that at that time, the encumbrance on the Residence was approximately $261,500.00.

The following portions of the Separation Agreement were read into evidence:

> Part III, Section 2: Upon the closing of said sale of said real estate,[1] after the payment of any closing costs, sales commissions, and the pay-off of the mortgage at Washington

---

[1] Here, "said real estate" refers to the Residence.

Mutual (or its successor), the remaining net proceeds shall be allocated as follows in the following order, to-wit:

A. The balances of the following credit cards/loans, calculated as of October 1, 2005, to-wit:
(i) Capital One Card in Wife's[2] name;
(ii) Citi Card in Wife's name;
(iii) U.S. Department of Education (student loan) in Wife's name;
(iv) Capital One Card in Husband's[3] name;
(v) Best Buy Card in the joint names of the parties[4]; and
(vi) American Card in Wife's name.
...
D. Sixty percent (60%) of the remaining net proceeds (after A. - C. above) to Wife;
E. Forty percent (40%) of the remaining net proceeds (after A. - C. above) to Husband;
F. From Wife's sixty percent (60%) allocation above, Wife shall pay to Husband the sum of $3,000.00 (as and for his nonmarital interest in the Horace Mann Retirement Fund).
...
Section 4: Until the closing of the Marital Residence:
(a) Husband and Wife shall be equally liable for and shall equally pay the following expenses associated with said marital residence: mortgage payment with Washington Mutual (or its successor), real estate taxes, homeowners' insurance, water, gas, electricity, sewer, telephone, trash, assessments, and subdivision fees.
...
Part V, Section 1: Except as set forth above, all remaining credit card balances, charge accounts or other debts incurred by either party in his or her sole name shall be the sole liability of the party incurring such debt and such party agrees to indemnify and hold harmless the other from said obligations.
...
Part VIII, Section 3: It is understood by the parties that this Separation Agreement cannot be amended or modified except by consent of both parties in

---

[2] Here "Wife" refers to Claimant.

[3] Here, "Husband" refers to Debtor.

[4] Here, "joint names of the parties" refers to both Claimant and Debtor.

writing, and the Court shall have no authority to amend this Agreement.

Part II, Section 3 of the Separation Agreement provides that Debtor is to grant Claimant fifty percent (50%) of Debtor's retirement plan accounts. Debtor testified that in satisfaction of Part II, Section 3 of the Separation Agreement, Debtor presented Claimant with a check for fifty percent (50%) of the retirement plans in Debtor's name, from which Debtor retained $3,000.00. This $3,000.00 was a premature credit for the funds that Claimant would have to pay Debtor after the sale of the Residence as described in Part III, Section 2, Subsection F of the Separation Agreement. Claimant testified that she did not take issue with Debtor's premature retention of these funds. Both Claimant and Debtor testified that neither contemplated the possibility that the marital debts would not be satisfied by the proceeds from the sale of the Residence.

In compliance with Part III, Section 4 of the Separation Agreement, Claimant testified that she and Debtor would initially meet once-a-month to decipher the expenses for that month, after which Debtor would write Claimant a personal check for fifty percent (50%) of said expenses. Eventually Claimant and Debtor conducted said discussions by electronic mail, after which Debtor would provide Claimant with a check for fifty percent (50%) of the month's expenses. Included in said monthly expense calculations were amounts for the Best Buy Card, the American Card and the U.S. Department of Education (student loan) (hereinafter "Student Loan").

The outstanding balances on the Best Buy Card and the American Card were paid-in-full prior to Debtor's bankruptcy filing through the aforementioned monthly payment arrangements between Claimant and Debtor. Debtor did pay fifty percent (50%) of the monthly payments for the Student Loan to Claimant up and until Debtor's bankruptcy filing. The Capital One Card in Debtor's name did not have an outstanding balance. Debtor testified that he opted to make said Best Buy Card, American Card and Student Loan payments in anticipation of obtaining a greater lump sum upon sale of the Residence as there would be less marital debts and expenses to satisfy from the

-3-

proceeds as mandated by Part III, Section 2 of the Separation Agreement.

After Debtor filed the bankruptcy petition, Claimant paid a $150.00 appraisal fee for the Residence. The Residence was sold and yielded minimal proceeds. There were insufficient funds to pay any of the outstanding debts contemplated by the Separation Agreement.

Claimant argues that Debtor's acts of paying the aforementioned debts prior to the sale of the Residence, in addition to the electronic mail communication between Debtor and Claimant, altered the Separation Agreement and as such, Debtor is liable to Claimant for fifty percent (50%) of the outstanding balance on the Student Loan, the Capital One Card in Claimant's name and the Citi Card in Claimant's name. Claimant interprets Part V, Section 3 of the Separation Agreement to state that both Claimant and Debtor are equally responsible for the debts incurred by either party prior to October 1, 2005, including the debts described in Part III, Section 2, Subsection A of the Separation Agreement; but both Claimant and Debtor will hold harmless the other as to any debt incurred after October 1, 2005 in either party's sole name. Claimant also asserts a claim for fifty percent (50%) of the appraisal fee as said fee was incurred pursuant to the sale of the Residence. Alternatively, Claimant argues that Debtor prematurely retained $3,000.00 which should have been paid to Debtor from Claimant's proceeds from the sale of the Residence, and as such, asserts a claim against Debtor's estate in that amount.

Debtor argues that any payment he made to Claimant for the Student Loan, Best Buy Card and American Card contemplated a risk that he would not recoup said funds upon sale of the Residence. Debtor does not assert any rights in these funds. Debtor argues that despite the content of any electronic mail communication between Claimant and Debtor, the parties did not amend the Separation Agreement in writing as required under Part VIII, Section 3 of the Separation Agreement. Therefore, Debtor contends that the Separation Agreement as written controls in that because there were insufficient proceeds from the sale of the Residence, both Claimant and Debtor must hold harmless the other as to any outstanding debt incurred in Claimant or Debtor's sole name

pursuant to Part V, Section 1 of the Separation Agreement.

Debtor further argues that Claimant is not entitled to a reimbursement of the $3,000.00 because Claimant allowed for Debtor's albeit premature credit of the $3,000.00. Finally, Debtor objects to Claimant's claim to fifty percent (50%) of the appraisal fee of $150.00 as such debt was incurred after Debtor's bankruptcy filing and should thus be considered a post-petition debt.

## JURISDICTION AND VENUE

This Court has jurisdiction of this matter pursuant 28 U.S.C. §§ 151, 157 and 1334 (2008) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) (2008). Venue is proper in this District under 28 U.S.C. § 1409(a) (2008).

## CONCLUSIONS OF LAW

The Court must first interpret the Separation Agreement and determine whether Claimant has an unsecured claim in the amount of $7,823.70 against Debtor. The Court must then determine whether Claimant is entitled to a reimbursement of the $3,000.00 that Debtor prematurely retained from Claimant. Finally, the Court must determine whether Claimant is entitled to a reimbursement of fifty percent (50%) of the $150.00 appraisal fee. The Court will address the matters in turn.

"[B]ankruptcy courts generally look beyond the four corners of the divorce decree to all the circumstances surrounding the creation of a liability." *In re Cross*, 175 B.R. 38, 41 (Bankr. D.N.D. 1994). A court may look to extrinsic evidence to determine the intent of the parties as described in the divorce decree. *Id.* Both Claimant and Debtor testified that neither contemplated the possibility that the Residence would be sold without sufficient proceeds to satisfy the marital debts. The Separation Agreement only provides that the marital debts are to be paid with the proceeds from the sale of the Residence; it does not contemplate an alternative means of payment. The Separation Agreement unambiguously lists an order in which any proceeds from the sale of the

Residence are to be allocated. Thereafter, pursuant to Part V, Section 1, "all remaining credit card balances, charge accounts or other debts incurred by either party in his or her sole name shall be the sole liability of the party incurring such debt and such party agrees to indemnify and hold harmless the other from said obligations." Separation Agreement, Part V, Section 1.  Claimant's claim is based on the remaining balance on the Capital One Card which is in Claimant's name, the Citi Card which is in Claimant's name and the Student Loan which is also in Claimant's name. As no other writing was presented to the contrary and it is clear that the parties intended to pay the enumerated marital debts from the sale proceeds, the Court resolves the matter as prescribed by the four corners of the Separation Agreement. Claimant's claim will not be allowed as it is contrary to the terms of the Separation Agreement.

During trial, Claimant posited that in the alternative, Debtor improperly retained a credit in the amount of $3,000.00 for Debtor's nonmarital interest in Claimant's retirement account.  Claimant now asserts a claim for reimbursement of said funds.  Debtor does not dispute that under the terms of the Separation Agreement, retention of the $3,000.00 was premature.  Receipt of these funds was conditional on there being sufficient proceeds from the sale of the Residence.  This was not the case.  As such, Debtor's retention of said funds was improper.

The final issue before the Court concerns Claimant's payment of the $150.00 appraisal fee. Part III, Section 4 of the Separation Agreement states that until the closing of the sale of the Residence, Debtor and Claimant shall be equally liable for expenses associated with the Residence, to the inclusion of "assessments". An appraisal is an assessment. BLACK'S LAW DICTIONARY 110 (8th ed. 2004).  Therefore, Debtor had an unliquidated contingent liability for fifty percent (50%) of the appraisal fee.  When the appraisal took place, the contingency was satisfied and the obligation became for a sum certain.  The mere fact that appraisal took place after Debtor filed the subject bankruptcy petition does not convert the appraisal fee to a post-petition debt. *Cf. In re Farmland Industries, Inc.,* 318 B.R. 159, 165 (Bankr. W.D. Mo. 2004).  Claimant properly

asserts a claim for fifty percent (50%) of the appraisal fee.   Therefore,

**IT IS ORDERED THAT** Debtors' [sic] Objection to Claim # 9-1 of Kimberly A. Thomas is SUSTAINED IN PART in that Claim #9-1 is allowed in the amount of $3,000.00 and in the amount of fifty percent (50%) of the $150.00 appraisal fee, for a total claim of $3,075.00.

_Kathy A. Surratt-States_
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  January 15, 2010
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Susan Elizabeth Skelton
Skelton Law Firm
2700 Macklind Ave
First Floor
St. Louis, MO 63139

Jane M. Carriker
8015 Forsyth Boulevard
St. Louis, MO 63105

Robert  and Dorinda Busby
7024 Dale Ave
Saint Louis, MO 63117

John V. LaBarge, Jr
Chapter 13 Trustee
P.O. Box 430908
St. Louis, MO 63143

Kimberly A. Thomas
437 Woodlawn Avenue
St. Louis, MO 63119